Mr. Justice Teacher
delivered the opinion of the court.
This was writ of error to the circuit court of Madison county. In a trial of the right of property in two slaves, the following facts were admitted to be the state of the case. The defendants in error were the plaintiffs in execution, issued upon a judgment obtained by them against one Samuel Thornhill, in the circuit court of Madison county, in May, 1838, upon which a forth *162 coming bond was given, after the forfeiture of which, in October following, an execution was issued, and upon the 10th of March, 1842, levied upon the slaves in question as the property of Samuel Thornhill, which are now claimed by Elijah Thornhill, the plaintiff in erroif; that one Rufus K. Flack also obtained a judgment against Samuel Thornhill in the United States circuit court of his district in June, 1838, an execution issued find a forthcoming bond given, which, having been forfeited in November following, an execution thereon was issued, which was levied on the slaves in question, which were sold by the marshal in April, 1839, and purchased by T. C. Tupper; that the slaves were in the possession of Samuel Thornhill up to April, 1839 ; that upon the sale under Flack’s execution, it was agreed between Samuel Thornhill and Tupper, that the latter should purchase the slaves at marshal’s sale for Elijah Thornhill, and should convey them to him in part payment of a debt due by Samuel to Elijah, and should permit Samuel to keep possession of the slaves until he had built a house for Tupper, which he had agreed to do for $1000 less than the usual- price, the possession of the slaves being the consideration for the reduction in the price; that Tupper permitted the slaves to remain in the possession of Samuel until 1840, when he conveyed them to Elijah, who resided in the same house with Samuel. The evidence shows also a deed of trust, recorded in 1837, from Samuel to one Charles Moore, upon the slaves in question, to secure Flack for the payment of the note which was the foundation of the action upon which he obtained judgment in the United States circuit court as before stated, and which note matured in February, 1838. The deed of trust contained a provision that Samuel was to be permitted to retain possession of the slaves until he made default in the payment of the note secured to be paid by the deed, and upon such default, Moore was allowed to sell the slaves at auction. The debt secured by the deed of trust was fully satisfied by Flack’s execution. The foregoing being the state of facts presented by the evidence, the claimant requested the court below to instruct the jury that if'they believed that default was made in the payment of the note secured *163 by the deed of trust before the date of Gilmer & Webb’s judgment, that Samuel Thornhill had not such an interest in the slaves as was the subject of levy and sale at that time; and that if they believed that the condition in the deed of trust, by which Samuel was to keep possession of the slaves, was broken by Samuel before the date of Gilmer & Webb’s judgment, and the deed was not at that time satisfied, then the judgment was not a lien upon the slaves at the time of its rendition. These instructions were refused by the court below, and a verdict was rendered in favor of the plaintiff in the execution.
The deed of trust above-mentioned, so far as it is concerned in this case, is made upon personal properly. Whether we view the instrument as a mortgage, a deed of trust, or as a mere pledge of property, the legal result is the same. The legal effect and operation of a mortgage of personal property, after the condition is forfeited, is to invest the mortgagee with an absolute interest in the property mortgaged. Brown v. Bement & Strong, 8 Johns. R. 96. Ackly v. Finch, 7 Cowen, 290. A deed of trust is an absolute conveyance in trust for the payment of a debt. The grantor has only contingent interest. The trustee holds the property first for the payment of the debt secured by the deed, and then for the benefit of the grantor, if any amount should remain after that debt is satisfied. This is not such an interest as can be reached by an execution. Bogert v. Perry, 17 Johns. R. 350. A pledge of property is subject to the same rule. In Story on Bailments, 238, it is said that goods pawned are not liable to be taken on execution in an action against the pawner. So in the case of Badlam v. Tucker, et al., 1 Pick. R. 400, it is said, that until payment or tender of payment of the money due to the mortgagee or pawnee of goods and chattels, it is very clear that the creditor of the mortgagor or pawner has no remedy against them by attachment and execution. Equities and rights to redeem are not subject to execution at common law, because where there is no legal right, there is no legal remedy. Scott v. Scholey, et al., 8 East, 467; Badlam v. Tucker, et al., 1 Pick. R. 399. We know of no statute of this state which authorizes a creditor to seize in *164 execution a right to redeem goods and chattels. Besides, this execution was levied on the slaves themselves, and not upon such an equity. It is true that it hence follows that the levy under Flack’s execution was also unauthorized, and a sale under it conveyed no legal title to the slaves, although perhaps, the purchaser and his assigns may be subrogated in equity to Flack’s rights under the deed of trust; but in a trial of the right of property seized in execution, the rules which regulate and govern it are the same that regulate and govern the trial of an issue in an action of detinue; and the burden of proof being upon the plaintiff in the execution, if no title is made to appear in the defendant in the execution, the plaintiff’s case is defeated equally as well as if a paramount title were established in the claimant. We think the instructions were improperly refused by the court.
The judgment is therefore reversed, and a new trial awarded.